IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT WILLIAMS,<br><br>    Defendant. | Case No. 22-CR-199<br><br><br><br>**DEFENDANT WILLIAMS' BRIEF IN SUPPORT OF MOTION TO RETURN SEIZED PROPERTY, TO QUASH THE WARRANTS AND TO SUPPRESS** |

Defendant hereby submits the following in support of his Motion to Return Seized Property, to Quash the Warrants and to Suppress.

**I.    Neither Warrant Authorized a Search for Content as Both Were requested and Issued under 18 USC 2703(c)(1)(A) and not under 2703(b); consequently, the Government is not lawfully in possession of content.**

The Facebook and Yahoo email warrant applications seek authority for a search[1] under 18 USC 2703(c)(1)(A), which provides:

> (c) Records Concerning Electronic Communication Service or Remote Computing Service.--
> (1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--
> (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure …

---

[1] Both warrant *applications* use the same language stating "This *warrant* is issued pursuant to FRCRP 41 and 18 USC 2703(c)(1)(A)."  The warrant application attached an affidavit and two Attachments A and B.  Attachment B to both warrant applications contained language describing things and supposedly *ordering* their production. Obviously, the Government's application and attachments were not the warrant nor were they judicial orders.  They did not become Orders merely by being attached and oddly referenced in the warrant itself.  It does reflect a certain rubber stamp expectation by the government; however, that proved true when the Magistrate Judge affixed her signature to the proposed warrants without changing anything, perhaps without even reading the warrants or applications or comprehending what she was actually ordering.  And, because the Government's application attachments B were in order form without a place for a judicial signature, it is hard to contend that the Magistrate Judge intended the attachments to the warrant to be her Order and the warrants do not say they are her order.  The attachments are documents the Government attached to its applications and that were attached again, apparently to the warrants.

1

The type of information to be produced under a warrant under subparagraph "c" is—

> 2) A provider of electronic communication service or remote computing service shall disclose to a governmental entity the—
> (A) name;
> (B) address;
> (C) local and long-distance telephone connection records, or records of session times and durations;
> (D) length of service (including start date) and types of service utilized;
> (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
> (F) means and source of payment for such service (including any credit card or bank account number)

These warrants were not sought or issued under subsection "b" of Section 2703 which provides:

> (b) Contents of Wire or Electronic Communications in a Remote Computing Service.--
> (1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—
> (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure

These warrants did not seek in the applications nor did the warrants themselves indicate reliance on statutory authority under section 2703(b) for contents of the accounts. To invoke the content provision, the Government and Court needed to identify that provision in their paperwork, and by identifying only subsection "C" they cannot now claim the warrant authorized contents to be seized and searched under a different subpart in the absence of the clearest of indications.

    II.    **The warrants on their face lacked a particular description of things to be searched and/or seized by referring solely to Attachment A.**

The two warrants describe the following:

> An attorney for the government requests the search of the following person or property located in the Northern District of California*…

>See Attachment A.    *This warrant is issued pursuant to [Rule 41 and 18 USC 2703(c)(1)(A)]. …
>
>I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property listed above, and that such search will reveal…see Attachment B.

Attachment A for each is identical in material respects:

### A. Property to Be Searched

>This warrant applies to *information associated* with the [Yahoo email/Facebook account] that is stored at premises [of the service provider].

Based on the way this warrant was written it is unclear what "information associated" with the account was to be searched or seized. The specific statutory reference was to the statutory authority for a "subscriber information" warrant, not an account "content" warrant. A warrant that authorizes the search of unspecified account information associated with an account is not adequately particularized, especially since the statute referenced limits the scope to subscriber information only. But, even by referencing the statute, the failure to identify what information was to be searched and seized, initially by the service provider under this warrant is fatal. The warrant actually provided no description whatsoever in its identification of what was to be searched through or seized. Because of the nature of this two-step warrant, it was fundamentally necessary for the warrant to specify what the service provider was supposed to furnish to be subject to the later search.

However, the defense expects the Government will argue that Attachment B saved the defective warrant and was itself part of what the Magistrate Judge ordered, and that the statutory reference is a scrivener's error or some excusable mistake.[2]  First, Attachment B to both warrants

---

[2] The defense believes that a full record would establish the Government has been making applications just like this one and with the same flaws for an extended time in a repeated fashion. This application and order format are ones the Government uses somewhat routinely, so this is not a simple one-case oversight or error but a pattern and practice engaged in by the Government and the Magistrate Judge who issued this warrant. The deterrent need is therefore great.

was unsigned and was what the Government had attached to its application.[3]  Second, the warrant itself only referenced Attachment B as describing what the search and seizure of the "information associated" with the account "would reveal."  That is far short of the Court referencing Attachment B as its Order directed to Yahoo or Facebook.  Attachment B was just used as a reference to the items the Court believed probable cause existed to search for and nothing more.  Attachment B was not a judicial order when attached to the government's application, and did not become one when it was attached to the warrant and referenced loosely as it was.   A judicial order is required for an account content warrant.

Defendant would also point out that this warrant was not actually executed by an investigator on this case and at least some parts of the warrant were sent to the service provider[4], meaning the warrant is not capable of being saved by reference to the affidavit(s) or any discussions with the Magistrate Judge.  This warrant needs to stand or fall on its own and be read within its four corners.

The warrants did indicate that it was anticipated that the search of the property described in Attachment A "will reveal…see Attachment B," but Attachment B is otherwise an unsigned description of items and Order language with no judicial signature.  It is noted that the discovery copy of attachment B for the email warrant appears to be identical to that attached to the application while the Attachment B to the Facebook warrant contains 2 additional pages

---

[3] We still have not had access to these warrant files so that we may examine the actual files because those files are the record, not what the Government produced in discovery.  Those files must be unsealed for examination by the defense and use at the hearing on this motion.

[4] The defense notes that while drafting this pleading, a long overdue return of search has been furnished. But, we have nothing that shows exactly what was served on the service providers back in December 2022.  We have been told that after the service providers were sent whatever they were sent, there was no communication until the items were received from the service providers.  Nevertheless, the failure to do a return of search for some 5 months is just further evidence of the Government's callous disregard of its obligations when it gets a warrant.  We suspect evidence will show the Government seldom files a return on these section 2703 warrants, again upping the need for deterrence.  We also believe the Government violated its notice obligations to Mr. Williams.

numbered 5 and 6.  (This needs to be verified by reviewing the actual court file).  Both the Attachment Bs to the applications contain language suggesting the attachments are some type of "Order."

The warrants in some form not yet known were sent to Facebook and Yahoo.  The date and circumstances of that are not yet known because the Government has not filed a return of search for either warrant or shared the paper trail of exactly what they did. In any event, it appears that they probably sent their attachment B to the providers, passing it off as a judicial order when it in fact was their attachment to their application (itself falsely characterized as a warrant) that had been referenced in a limited way by the warrant itself and was not a signed judicial order.   Nevertheless, these warrants were replied to by the two service providers by providing the entirety of their emails and Facebook information dating from at least January 1, 2018 to present.  These warrants were a model of incompetency if the goal was to ask the Court for authority for a contents warrant under 2703(b) and to direct by judicial order what was contained in Attachment B.  It is not this court's job to fix these bad warrants or to save the government from its own folly.  The government and the magistrate judge are responsible for this mess and accountability and deterrence comes in the form of quashing the warrants, suppressing evidence, and ordering what was seized returned.

> III.    **The search warrants that were issued, if we are to reference Attachment B as what was actually subject to being produced by the warrants were overbroad and beyond any basis in probable cause.**

"The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect."  <u>In the Matter of the Search of Information Associated with the Facebook Account Identified by the Username Aaron Alexis That is Stored at Premises Controlled by Facebook,</u>

*Inc.,* 21 F. Supp.3d 1 (D. Col. 2013). Searches deemed necessary and authorized by warrant should be as limited as possible. To follow the dictates of the Fourth and avoid issuing a general search warrant, court must be careful to ensure that probable cause exists to seize each item specified in warrant. "If the government cannot create a practical way to perform electronic searches and seizures that does not violate the Fourth Amendment, then it is simply not entitled to that information." *Id.* at 9. In this case, the government did not need to seize all of the emails as they did. Yahoo will confirm the government had the ability to gain remote access to a relevant portion of the email account contents and search it remotely, seize targeted items (if any), and never seize the entirety of the account. They actually had the ability to do so in this case when Yahoo loaded the emails for the government into a remote location. It was the government that downloaded the email store set up by Yahoo. The fact that method may be less convenient or that the government claims it does not do it that way, is of no consequence to the Fourth Amendment. By downloading everything and taking possession of it, there is no doubt the government seized it, now has possession of it, and that the vast majority of what was seized was not seized with probable cause. Think about it this way: If the government got a warrant to search for identified paper documents at a storage facility or office, they would get a warrant authorizing them to search that location for the targeted items/objects of the search for which probable cause was shown. They would go to the location, search through the files for the search objects, and depart, leaving an inventory of what was seized. But, they would not have the authority to essentially seize all the records and remove them from the premises to search at some later time without the warrant being recognized as overbroad and the search being a general search. The government's entire claim that they need to seize the entire email store is bogus factually and has no legal support without it's bogus factual claim that they can do such a

search no other way.[5]  Moreover, as noted below, the Government's own Attachment B did not actually authorize the *seizure* of everything the service provider disclosed.  They were only authorized, if attachment B applies, to "seize" the items from division II of attachment B out of the provider-disclosed items described in divison I.  If that construction of Attachment B is correct, it would be like the Government entering the storage facility or office and relying on it's warrant as authority to seize every file or document.

If attachment B has something to do with the question, it is defective as well.  First, Attachment B to the email warrant required the provider to disclose content information--*all* emails-- without limit as to time.  See paragraph 2 under section I.  That alone makes the warrant defective.  <u>In the Matter of the Search of Information Associated with Four Redacted Gmail Accounts,</u> 371 F. Supp.3d 843 (D. Or. 2018).  "Although computer technology may in theory justify blanket seizures . . ., the government must still demonstrate to the judge *factually* why such a broad search and seizure authority is reasonable in the case at hand . . ., Thus, there must be some threshold showing before the government may 'seize the haystack to look for the needle.'"

In the Facebook warrant as well as elsewhere in the email warrant the date for production goes back to January 2018.  With regard to Mr. Williams, the earliest date range that conceivably should have been under consideration was September 2020. (Affidavit[6] paragraph

---

[5] It is not at all clear that these warrants actually authorized the email and Facebook seizures by downloading and taking possession of all contents that the provider was directed to "disclose," even considering Attachment B.  If we look at Attachment B it used the word "disclose" in division I in reference to the service provider's disclosure obligations, and in division II it identified what the government could "seize", which was a narrow subset of the divison I disclosure description.  Attachment B, if considered as an Order, did not give the government authority to download the entire disclosures from Facebook or Yahoo.  It is not clear the Magistrate Judge contemplated the government downloading and possessing 5 years worth of email and Facebook activity vs the provider just making it available to review for the search objects to be seized following "execution."  Nothing in the warrant expressly says that in any event.

[6] The December 7, 2022 affidavit references and seeks to incorporate a different affidavit or appendix, but it is not completely clear which affidavit is referenced or what the court files for these two warrants would show because we

9).  There is no probable cause basis to have searched through and seized materials in the Williams email or Facebook accounts going back for some 32 months earlier and going back to January 1, 2018 or from the beginning of time.  The time period is grossly overbroad and not supported by probable cause to believe any criminal evidence would be found in that earlier 32-month period.

Moreover, the bare assertions in a boilerplate affidavit about Facebook are not specific enough to give rise to probable cause to believe anything of evidentiary import would be found on the overbroad Facebook warrant that was more of a dragnet search than anything.  The only specific nexus to Facebook shown in the affidavit was a single posting concerning a gun shoot that was being sponsored, but that does not give rise to probable cause to believe more evidence would be found in the Facebook search/fishing expedition going back to January 1, 2018.  In fact, they had already looked through Mr. Williams' Facebook postings before the search and knew there was nothing of note there except the single item noted in the affidavit.

The seizure of the entire email and Facebook stores violates the Fourth Amendment and is an unconstitutional privacy intrusion into unrelated materials that the Government now has control over and resists returning to the privacy interest holder.  It is very unclear that the government has even done the review of the Facebook production in the last 5 months because what they produced in discovery was the whole of the 5-year seizure of Facebook materials.  If the warrant was to allow the government to actually search through Facebook for what it had said, then they appear to not have done so and just used the warrant for what we say—a general, indiscriminate seizure.  The theory of the seize everything and search later procedure is one that would allow for the second search of the whole to seek the responsive items in a practical

---

have not been provided access and the production of this section of discovery requires interpretation we are not willing to make as a substitute for the actual warrant files, 4:22-mj-769, and 4:22-mj-770.

manner. But, if as we believe is true the Government is not doing step 2 at all or perhaps as it prepares for trial and identifies trial exhibits, then that is being done contrary to the underlying basis for the process and is an unreasonable abuse of the process entrusted to them by the Court[7]. Again, we believe this is going to be shown to be the practice and ups the need for deterrence.

Moreover, the two-step warrant execution process being employed here violates the Fourth Amendment because the Government has seized and plans to hold onto a mass of material only a tiny fraction of which might be within the scope of items described in Attachment B. The manner of execution violates the prohibition against issuing a warrant that does not particularly describe the things to be seized and searched. What the Government should have done is to get a proper warrant for a remote access search whereupon they could have searched for and seized properly described items within a properly scoped database.

### IV. The warrant also violates the Fourth Amendment in that it does not tell the Government what it is to do with non-responsive materials sent by the service providers.

The warrants allow for the seizure in perpetuity of unlimited emails and 5 years worth of Facebook activity without ever having to account back for the non-responsive items, delete them, or return them. Yet, the seizure and retention of these broad items that are not lawful search objects to begin with is not supported by probable cause, making their seizure and retention in violation of the Fourth Amendment. The Court in *United States v. Ganias*, noted that this would transform a specific warrant into the "equivalent of a general warrant" after the fact. 755 F.3d 125 (2nd Cir. 2014). The court in that case ruled that the accommodations afforded to electronic

---

[7] It should be noted that Rule 41 requires the Government to file its search return when it receives the initial production from the service provider. But, there is zero accountability to the Court thereafter because the Government is not required to tell the Court that it searched through what it received and report what it found, if such a further search ever occurs. It is important that the Court realize what is going on with these warrants and require that the Government report back to the Court on its step two review, lest the Government's abuse of warrant power continue surreptitiously.

9

searches do not justify the indefinite retention nor the ability to search them whenever the government later developed probable cause" as it leads to a de facto invasion of the particularity requirement. *Id*. The court in *United States v. Thompson*, found the notion that the People are entitled to retain 100,000 of the Defendant's emails and continue to search them for a period which extended for more than four years 'plainly unreasonable'. 51 Misc.3d 693 (2016). The basic threshold question regarding the government's retention rights in over seizure cases is, "when concededly non-responsive digital communications are obtained in an over seizure warrant to allow the government to conduct an effective search, can the non-responsive material be construed as being validly seized or is it only provided as an administrative convenience to allow the search for responsive material to occur"? *Thompson*, 51 Misc.3d 693, 720 (N.Y. S.Ct. 2016). In response to this problem, some courts have included minimization procedures in their §2703 search warrants, ordering the government to return or destroy all materials that it determines are not relevant to the investigation. *In re Facebook Account Identified by the Username Aaron Alexis*, 21 F. Supp.3d 1 (D.D.C. 2013).

      Although we believe that the warrant if attachment B is considered as part of it unlawfully authorized this wholesale indiscriminate seizure under a seize everything and search later concept, even if that process were lawful, it is not lawful to retain (seize) non-responsive materials once the second phase of the warrant is completed. Non-responsive items must be returned without delay to avoid this warrant being a general warrant authorizing wholesale indiscriminate seizure.

> **V.  The obtainment of the email warrant was also done with reckless and callous disregard of Mr. Williams' attorney-client privilege because the Government knew Mr. Williams was represented by counsel since late August, that Mr. Williams would be communicating with counsel, and that such communications would be turned over to the Government using these ex-parte warrants.**

The Government took no advance steps to safeguard Mr. Williams' privileged communications such as by instructing Yahoo to omit counsel's email domain from the reply, or by seeking court directive. Instead, they did not tell the Court they were asking the Court to facilitate the Government's seizure of privileged communications. What's worse than the initial folly of seizing the privileged emails, Government counsel had the audacity to suggest they have the right to retain those emails even after they are identified as privileged and they have refused to agree they should be returned. The government has objected to advising the defense of the identity of all persons who have had access to the emails or how many copies have been circulated and to whom while contemporaneously resisting efforts by the defense to get the court to address the issue via a protective order and an order for the government to account. As it stands today, the Government has been less than helpful in identifying who has seen the Yahoo email store or his communications, how many copies are circulating, who has access to them wherever they may be now, and who has handled them from day one. Efforts to get Government counsel to identify persons other than Government counsel who have knowledge of these matters have been unavailing as well. Despite assertions that Government counsel have not reviewed the emails, the Government has actually produced the emails in its discovery file. Who copied the emails to discovery file, who has access to them, and so forth are questions unanswered. It should be noted that prior to taking the "We have not reviewed" and we just plan to remove emails to and from defense counsel's office, the government had not taken any steps to protect the privileged communications to our knowledge and only did so later and then wanted to do some type of "review" of the content for privilege using a South Carolina taint team. And, the most recent warrant return shows that the case agent from the ATF received the emails personally from Yahoo on December 13, 2022. There is almost certainly a way to determine if the email

store was accessed on or after December 13, and the government has really not instilled a lot of confidence in what they have said, which is not under oath and not consistent with the effort to obtain the emails in the first place. After all, the government obtained the yahoo email store to be able to read the emails and they now want us to accept at face value that they made a voluntary choice not to do so. While that might be true, the defense feels the better course of action will be to take testimony or possibly require affidavits.

As far as the law goes there is good authority for an analogous situation from the Fifth Circuit. It is simplest to quote the opinion passage in whole:

> The district court incorrectly concluded that the government did not show a "callous disregard" for Harbor's rights simply because it obtained search warrants prior to seizing Harbor's privileged materials. But it is a stipulated fact in this case that "the government did not seek express prior authorization from the issuing Magistrate Judge for the seizure of attorney-client privileged materials." Stipulations of Fact at 4, *Harbor Healthcare Syst. v. United States*, No. 4:18-CV-3195 (S.D. Tex. Dec. 4, 2018), ECF No. 17. It is further stipulated that the government knew that Sprott's "office and computer contained attorney-client privileged documents and attorney work product" when it executed one of the search warrants. *Id.* at 3–4. The stipulated facts show that the government made no attempt to respect Harbor's right to attorney–client privilege in the initial search. *Cf. United States v. Zolin*, 491 U.S. 554, 571, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."); *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 982 F.3d 409, 411 (5th Cir. 2020) (Elrod, J., dissenting from denial of rehearing *en banc*) ("Although the privilege may at times prevent the government from obtaining useful information, 'this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice.' " (quoting *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1432 (5th Cir. 1991))).
>
> Moreover, the government, by its treatment of Harbor's privileged materials after the search, further disregarded Harbor's rights. When asked at oral argument why the government had not already destroyed or returned copies of documents that it agreed were privileged, the government said: "The only reason they haven't been destroyed is for the potential for a future filter team, if the criminal team looks at the privilege logs and

disagrees for some reason." A taint team serves no practical effect if the government refuses to destroy or return the copies of documents that the taint team has identified as privileged. The government has thus conceded that it has no intent to respect Harbor's interest in the privacy of its privileged materials as the investigation unfolds.
The district court was wrong to overlook the government's continued retention of privileged documents as an aspect of its "callous disregard," and it was simply mistaken in its belief that there were "processes in place to protect Harbor's privileged information."

The district court likewise erred in its assessment of Harbor's need for the documents and information the government seized. In the view of the district court, Harbor's lack of a practical need for access to the copies of the documents retained by the government "weigh[ed] against granting Rule 41(g) relief." Sealed Order at 5, *Harbor Healthcare Sys. v. United States*, No. 4:18-CV-3195 (S.D. Tex. Aug. 19, 2019), ECF No. 35. But Harbor's need does not lie in accessing the government's copies. Rather, it lies in protecting the privacy of the privileged material in the documents. *Cf. Richey*, 515 F.2d at 1242 n.5 ("We have indicated previously that a plaintiff in a civil action for the return of property has a sufficient proprietary interest in copies of documents which have been seized to demand their return as well as the return of the originals."). The whole point of privilege is privacy. *Cf. Fisher v. United States*, 425 U.S. 391, 399, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("[T]he Court has often stated that one of the several purposes served by the constitutional privilege against compelled testimonial self-incrimination is that of protecting ***600** personal privacy.... Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests...."); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 545 n.1, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (Rehnquist, J., dissenting) ("The invocation of such privileges has the effect of protecting the privacy of a communication made confidentially ... by a client to an attorney; the purpose of the privilege, in each case, is to assure free communication on the part of the confidant and of the client, respectively."). Despite Harbor's great privacy interest, the government has held its attorney–client privileged documents since May 18, 2017—the government has deliberately held on to Harbor's privileged material for over four years. The district court erred by failing to account for Harbor's privacy need, which weighs heavily in favor of granting Rule 41(g) relief.
The government's reliance on *United States v. Search of Law Office, Residence, and Storage Unit Alan Brown*, 341 F.3d 404 (5th Cir. 2003) is unavailing. In that case, the Rule 41 movant argued that he would suffer irreparable reputational harm from a grand-jury indictment. *Id.* at 414–15. Here, however, Harbor has not alleged any harm arising from a possible grand jury—it alleges a harm from the ongoing intrusion into its privacy and the continued possession of attorney–client privileged documents. Importantly, in *Alan Brown*, the movant failed "to identify specific privileged documents in the hands of

the government or provide a legal basis for asserting a particular privilege." *Id*. at 414. Here, Harbor has identified thousands of privileged documents, and the government has conceded the basis for the privilege for many of those. Harbor has done far more than assert "vague allegations," *id.*, but has alleged a privacy harm arising from the seizure and retention of specific attorney–client privileged documents.

The government's ongoing intrusion on Harbor's privacy constitutes an irreparable injury that can be cured only by Rule 41(g) relief. Harbor remains injured as long as the government retains its privileged documents. That injury can only be made whole by the government returning and destroying its copies of the privileged material. *See Richey*, 515 F.2d at 1242 n.5

<u>Harbor Healthcare Sys., L.P. v. United States</u>, 5 F.4th 593, 599–600 (5th Cir. 2021)

/s/ Dean Stowers
Dean Stowers
Stowers & Nelsen PLC
650 S. Prairie View Drive, Suite 130
West Des Moines, IA 50266
Phone: (515) 224-7446
Fax: (515) 225-6215
Email: dean@stowersnelsen.com
ATTORNEY FOR DEFENDANT
Robert Williams

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Copies to:

Ryan Wade Leemkuil
Mikaela J. Shotwell
Nick Klinefeldt
Rachel A. Yaggi